SRM

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

**Jeffrey James Faulkner,**
Petitioner
-vs-
**Dora B. Schriro, et al.,**
Respondent(s)

CV-05-0148-PHX-SMM (JI)

**REPORT & RECOMMENDATION**
**On Petition for Writ of Habeas Corpus**
**Pursuant to 28 U.S.C. § 2254**

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 29, 2006 (#26).  On July 24, 2006, Respondents filed their Answer (#39), and Exhibits thereto on July 25, 2006 (#40).   Petitioner filed a Reply on August 30, 2006 (#46).Respondents filed a Supplement on February 16, 2006 (#48).

The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A. FACTUAL BACKGROUND

On October 10, 1994, two uniformed City of Phoenix police officers, Blackshear and Coffman, were on routine patrol and noted suspicious activity at a storage rental facility.  They approached the rental office and encountered Petitioner's co-defendant Kenneth Grindley outside.  They were then fired upon from inside the office, hitting officer Blackshear in the

1  arm, knocking him to the ground.  The Petitioner then ran from the office, pointed a gun at the

2  downed officer, and shot him in the chest, penetrating his bullet proof vest.  The other officer,

3  Coffman, exchanged gunfire with Grindley, and then Petitioner and Grindley fled the scene,

4  but were found hiding under trailers in a nearby trailer park.  (Exhibit K, Memorandum

5  Decision at 2-3.)  (Exhibits to the Answer, #40, are referenced herein as "Exhibit ___.")

6

7  **B. PROCEEDINGS AT FIRST TRIAL**

8      Petitioner and Grindley were charged in the Maricopa County Superior Court case

9  number 94-09172 with two counts of aggravated assault, one as to each of the officers.

10  (Exhibit A, Indictment.)  The state alleged that Petitioner had two prior felony convictions and

11  was on parole at the time of the instant offense.  (Exhibit K, Memorandum Decision at 3.)  The

12  trial of the two defendants was severed (Exhibit B, M.E. 9/8/95), and Petitioner proceeded to

13  trial, testifying in his own behalf as follows:

14          He claimed he had been receiving death threats over the
       telephone, which made him "very paranoid."  Consequently, he began
15      carrying a gun to protect himself.  Defendant said that when he first saw
       Blackshear in the doorway of the rental office, he did not know that
16      Blackshear was a police officer, notwithstanding that Blackshear was in
       uniform. He claimed that Blackshear pointed a gun at him and he thought
17      Blackshear was going to shoot him. He denied that he continued to shoot
       at Blackshear after he fell.  He also denied shooting at Coffman and
18      claimed he did not see Grindley shoot Coffman.

19  (Exhibit K, Mem. Dec. at 3.)

20      Petitioner was convicted on both counts.   (Exhibit D, Verdicts.)   He received

21  consecutive sentences of 35 years flat time on both counts.  (Exhibit G, Sentence.)

22

23  **C.  PROCEEDINGS ON FIRST DIRECT APPEAL**

24      Petitioner filed a direct appeal, asserting the following issues for review:

25      1.    The trial court erred in failing to excuse a juror for cause who indicated she

26          would be biased in favor of the state.

27      2.    The trial court erred in failing to grant Appellant's motion for judgment of

28          acquittal as to Count II of the Indictment.

3.      The prosecutor was guilty of misconduct in vouching for the credibility of the state's witnesses.  The trial court erred in overruling Appellant's objection.

4.      The court erred in the manner in which it instructed the jury, by giving an accomplice instruction and failing to give a lesser-included instruction.

(Exhibit H, Opening Brief.)

The Arizona Court of Appeals found that the trial court abused its discretion in failing to strike a juror, and thus reversed Petitioner's convictions and sentences.  (Exhibit K, Mem. Dec. at 8.)

## D.  PROCEEDINGS AT SECOND TRIAL

Petitioner again proceeded to trial on March 4, 1998.  (Exhibit M, M.E. 3/4/98.)  He was again convicted by the jury on both counts. (Exhibit DD, Verdicts.) Refusing to recognize Petitioner's earlier admission as to his prior convictions, the trial court sentenced Petitioner to consecutive sentences of 21 years on each count.

Moreover, the sentences were made consecutive to Petitioner's sentences in other criminal proceedings, Maricopa County Superior Court case numbers 95-00234 and 95-00235 (the "1995 cases"). (Exhibit EE, Sentence 5/8/98.)  Petitioner had entered into written plea agreements in those other cases, which included stipulations that the sentences in those cases would be concurrent with the present case.  (Exhibit KK, PCR Petition at Exhibits A & B, Plea Agreements.)  The sentences in those other cases provided that they were concurrent with the sentences in each other and in the instant case, number 94-09712.  (Exhibit KK, PCR Petition at Exhibits C and D, Sentences.)

## E.  PROCEEDINGS ON SECOND DIRECT APPEAL

Petitioner filed a direct appeal (Exhibit GG), but subsequently moved to voluntarily withdraw the appeal (Exhibit HH).  The motion to voluntarily dismiss was granted. (Exhibit II.)

**F.  PROCEEDINGS ON FIRST POST-CONVICTION RELIEF**

**Before Trial Court** - Petitioner then filed a notice of post-conviction relief, and counsel was appointed to represent him.  (Exhibit JJ, M.E. 7/14/98.)  Petitioner asserted a single claim for relief: he was entitled to concurrent sentencing between his sentences on the instant convictions, and those in his other convictions in case number 95-00234 and 95-00235.  (Exhibit KK, PCR Petition.)  The state argued in response that not only were these claims without merit, but they should have been asserted on direct appeal, and should be summarily dismissed.  (Exhibit LL, Response.)   After hearings and supplemental briefs, the trial court noted the viability of the state's preclusion argument but disposed of the claims on their merits. (Exhibit SS, Order 6/17/99.)

**Before Court of Appeals** - Petitioner sought review by the Arizona Court of Appeals. Petitioner argued: (1)  that the trial court had erred in making the sentences in the present case consecutive to those in the "1995 cases," and (2) that Petitioner should have been able to argue ineffective assistance a result of trial counsel's failure to oppose the consecutive sentences. (Exhibit TT, Petition for Review.)     The Arizona Court of Appeals rejected the state's preclusion arguments, and found that the trial court abused its discretion in rejecting Petitioner's arguments that the sentences were a breach of the state's plea agreements.   The case was remanded to the trial court for re-sentencing.   (Exhibit WW.)

**Before Supreme Court** - Petitioner then filed a *pro se* petition for review by the Arizona Supreme Court, arguing that the Court of Appeals should have also granted relief on the consecutive sentences on the two counts in this case  (Exhibit XX.)  The Arizona Supreme Court summarily denied review.  (Exhibit YY.)

**On Resentencing** - Petitioner's motion for a new sentencing judge was denied. (Exhibit CCC, Minute Order 12/19/00.)  Sentence was ultimately entered on January 4, 2001, for consecutive terms of 21 years on each of the counts, with the proviso that the sentences would be concurrent with those in the 1995 cases.  (Exhibit DDD, Sentences.)

//

//

**G.  PROCEEDINGS ON SECOND DIRECT APPEAL**

Petitioner again sought review by the Arizona Court of Appeals on direct appeal, this time arguing that he was denied due process of law under the Arizona and United States Constitutions because the sentencing judge had refused to recuse himself.  (Exhibit FFF.)  The Arizona Court of Appeals affirmed the sentences, finding that there was no harm to the failure to recuse, since the trial court had no discretion in the resentencing on remand.  (Exhibit HHH.)

Petitioner sought review by the Arizona Supreme Court, which was summarily denied by an Order filed March 4, 2002.  (Exhibit III.)  The Arizona Court of Appeals issued its mandate on April 4, 20002.

**H.  PROCEEDINGS ON SECOND POST-CONVICTION RELIEF**

Petitioner filed his second Notice of Post-Conviction Relief on March 26, 2002 (Exhibit KKK).  Counsel was appointed, and on May 29, 2002 counsel filed a notice that he had completed review and was unable to find any issues for review.  (Exhibit LLL.)  On June 20, 2002, Petitioner filed his *pro se* Petition for Post-Conviction Relief (Exhibit MMM).  He filed a *pro se* Supplement on October 24, 2002 (Exhibit NNN), and counsel filed a Supplement the same day (Exhibit OOO).  The trial court denied some of the claims as precluded by failure to raise them previously, rejected others as without merit, but scheduled a hearing on Petitioner's claim based on changes in the law on accomplice liability.  (Exhibit XXX, Order 1/9/03.)   After a hearing, the remaining claim was also denied.  (Exhibit ZZZ, Order 3/3/03.)

Petitioner then filed a *pro se* Petition for Review by the Arizona Court of Appeals (Exhibit AAAA).  Petitioner asserted the following grounds for relief:

1.    The change in Arizona state law on accomplice liability.  (Exhibit AAAA at 9-11.)

2.    Violation of the prohibition against double jeopardy.  (*Id.* at 12-15.)

3.    Insufficiency of the evidence on Count II (Petitioner's assault on Officer Coffman).  (*Id.* at 15.)

4.    Ineffective assistance of counsel based on failure to argue that the two consecutive aggravated-assault sentences should have each been imposed concurrently to the plea-agreement-based sentences in the "1995 cases". (*Id.* at 16-20.)

The Arizona Court of Appeals summarily denied review. (Exhibit DDDD, Order 6/29/04.)

Petitioner then sought review by the Arizona Supreme Court, arguing: (1) the change in law on accomplice liability; (2) error in the instructions on accomplice liability; (3) double punishment; and (4) ineffective assistance of counsel at re-sentencing and on post-conviction review. (Exhibit EEEE.)  The petition was summarily denied by the Arizona Supreme Court on October 4, 2004 (Exhibit FFFF.)

**I.  PROCEEDINGS ON THIRD POST-CONVICTION RELIEF**

On August 18, 2004, Petitioner filed his third Notice of Post-Conviction Relief, seeking relief pursuant to *Blakely v. Washington*. (Exhibit GGGG.) The trial court summarily denied the petition on August 20, 2004, finding that the petition was untimely, and did not qualify for an exception for changes in the law since *Blakely*, etc. was not retroactively applicable on post-conviction review.  (Exhibit HHHH.)

**J.  PROCEEDINGS ON FOURTH POST-CONVICTION RELIEF**

On January 16, 2005, Petitioner filed his fourth Notice of Post-Conviction Relief, again raising a claim under *Blakely*.  (Exhibit IIII.)  On January 31, 2005, the trial court summarily denied the petition, finding that it raised claims previously decided.  (Exhibit JJJJ.) Petitioner filed a Motion for Reconsideration (Exhibit KKKK), which was summarily denied (Exhibit LLLL).

**K.  PROCEEDINGS ON FIFTH POST-CONVICTION RELIEF**

On March 2, 2005, Petitioner filed his fifth post-conviction relief proceeding, again seeking relief under *Blakely*. (Reply, #46, Declaration, Exhibit B.)   The trial court noted the

repeated assertion of a *Blakely* claim, and again summarily dismissed the petition.  (Exhibit MMMM, Order 3/28/05.)     Petitioner filed a motion for reconsideration, which was summarily denied.  (Exhibit NNNN, Order 4/14/05.)

Petitioner then sought review by the Arizona Court of Appeals.  (Reply, #46, Declaration, Exhibit C.)  They summarily denied review on February 17, 2006.  (Exhibit OOOO.)


**L.  ORIGINAL FEDERAL HABEAS PROCEEDINGS**

Petitioner filed an original federal habeas petition on October 17, 2000 in District of Arizona case number CV-00-2000-PHX-SMM-JRI.  On April 18, 2002, the Court dismissed that petition without prejudice.


**M.  PRESENT FEDERAL HABEAS PROCEEDINGS**

Petitioner filed his original Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on January 12, 2005 (#1).  That petition was ordered served, but on May 9, 2005, Petitioner sought leave to amend his petition.  (Motion #10.)  That motion was granted (Order 10/20/05, #17), and Petitioner's first Amended Petition (#18) was filed the same date. However, on March 2, 2006, Petitioner filed his second motion to amend (#24) which was granted on March 29, 2006, resulting in the filing of the present, Second Amended Petition for Writ of Habeas Corpus (#26).  Petitioner's Second Amended Petition asserts four grounds for relief:

1. Petitioner was denied due process of law when the trial court denied his motion to dismiss based upon the absence of evidence to support accomplice liability on Count II of the Indictment.  (Second Amended Petition, #26 at 5-5B.)

2. Petitioner's due process and double jeopardy rights were violated when his sentences were made consecutive to his sentences in the 1995 cases despite the provisions of his plea agreements to the contrary.  (*Id.* at 6-6A.)

3. Petitioner's due process rights were violated by the imposition of consecutive

1   sentences in violation of state law.  (*Id.* at 7.)

2      4.    Petitioner's due process rights were violated by the aggravation of his sentence

3              by factors not determined by the jury, in violation of *Apprendi v. New Jersey,*

4              530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004).  (*Id.*

5              at 8.)

6      On July 24, 2006, Respondents filed their Answer (#39), and Exhibits thereto on July

7   25, 2006 (#40).  Respondents argue that Ground One is procedurally defaulted.  (Answer, #39

8   at 9-16.)  They argue that Ground Two (Concurrent Sentencing Agreement) is without merit

9   because on re-sentencing, Petitioner received the relief he is requesting.  (*Id.* at 16.)  They

10   argue that Ground Three (Consecutive Sentences) is without merit, because Count I and Count

11   II of the charges reflected separate conduct.  (*Id.* at 16-24.)  Finally, they argue that Ground

12   Four (*Blakely*) is without merit because *Blakely* is not retroactively applicable on habeas

13   review.  (*Id.* at 24-25.)  On February 16, 2006, Respondents supplemented the record (#48)

14   to provide a complete copy of their Exhibit K.

15      Petitioner filed a Reply on August 30, 2006 (#46).  Petitioner argues that he exhausted

16   his state remedies on Ground One in his second state post-conviction relief proceedings, and

17   any procedural default should be excused because Petitioner is actually innocent.  (*Id.* at 5-9.)

18   He also argues the merits of Ground One.  (*Id.* at 9-18.)  Petitioner argues that Ground Two

19   asserts not only that the plea agreements in the 1995 cases required that his sentences in those

20   cases be concurrent with his sentence in the instant case, but that all sentences in the instant

21   case were required to be concurrent with each other.  Petitioner also argues that failure to

22   impose the reduced concurrent sentences on re-sentencing was a violation of due process.  (*Id.*

23   at 18-22.)  On Ground Three, Petitioner argues that double jeopardy is violated because the

24   acts forming the basis of the conviction on the two counts are the same.  (*Id.* at 22-25.)

25   Finally, as to Ground Four, Petitioner argues that *Apprendi* was existent at the time his

26   conviction became final, and therefore no new rule need be applied to justify relief.  (*Id.* at 25-

27   35.)  Further, Petitioner argues that he should be entitled to equitable tolling for the delay in

28   presenting his *Blakely/Apprendi* claims, and that the claims are meritorious.  (*Id.* at 35-38.)

1   Petitioner appends as exhibits to his Reply various opinions in other cases, and his own
2   Declaration supporting the submission of various additional records from the state court
3   proceedings.

4

5   **III. APPLICATION OF LAW TO FACTS**

6   **A.  GROUND ONE- INSUFFICIENT EVIDENCE ON ACCOMPLICE LIABILITY**

7   Petitioner asserts in Grand One of his Petition that he was denied due process of law
8   when the trial court denied his motion to dismiss based upon the absence of evidence to
9   support accomplice liability on Count II of the Indictment.  (Amended Petition, #26 at 5-5B.)
10  Respondents argue that Petitioner's Ground One was never properly exhausted.  (Answer, #39
11  at 9-16.)   Petitioner replies that he exhausted his state remedies on Ground One in his second
12  state post-conviction relief proceedings, and any procedural default should be excused because
13  Petitioner is actually innocent.  (Reply #46 at 5-9.)

14

15  **1.  Exhaustion Requirement**

16  Generally, a federal court has authority to review a state prisoner's claims only if
17  available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)
18  (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28
19  U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show
20  that he has properly exhausted each claim.  *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir.
21  1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

22  Ordinarily,  "to exhaust one's state court remedies in Arizona, a petitioner must first
23  raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-
24  conviction relief pursuant to Rule 32."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).
25  Only one of these avenues of relief must be exhausted before bringing a habeas petition in
26  federal court.  This is true even where alternative avenues of reviewing constitutional issues
27  are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner
28  v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).  "In cases

1   not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are

2   exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on

3   them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 n. 3 (9th Cir. 2005)(quoting *Swoopes v.*

4   *Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999)).

5        To result in exhaustion, claims must not only be presented in the proper forum, but must

6   be "fairly presented."   That is, the petitioner must provide the state courts with a "fair

7   opportunity" to apply controlling legal principles to the facts bearing upon his constitutional

8   claim.  28 U.S.C. § 2254;  *Picard v. Connor,* 404 U.S. 270, 276-277 (1971).   A claim has

9   been fairly presented to the state's highest court if the petitioner has described both the

10  operative facts and the federal legal theory on which the claim is based.  *Kelly v. Small*, 315

11  F.3d 1063, 1066 (9th Cir. 2002).

12

13  **2.  Application to Petitioner's Claims**

14       As noted above, Petitioner asserts he raised the claims in Ground One in his Second

15  PCR proceeding.   In fact, Argument 5 of Petitioner's *pro per* Supplemental Petition did raise

16  a due process claim based on insufficiency of the evidence on Count II, citing, *inter alia, In*

17  *re Winship*, 397 U.S. 358 (1970).  (Exhibit MMM at 16-17.)  However, Petitioner did not

18  repeat this argument in his Petition for Review to the Arizona Court of Appeals. "[O]rdinarily

19  a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond

20  a petition or a brief (or a similar document) that does not alert it to the presence of a federal

21  claim in order to find material, such as a lower court opinion in the case, that does so."

22  *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).   The Arizona habeas petitioner "must have

23  presented his federal, constitutional issue before the Arizona Court of Appeals within the four

24  corners of his appellate briefing." *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005).

25       Rather than reasserting  his  insufficient evidence claim to the Arizona Court of

26  Appeals, Petitioner  simply argued,  as part-of his double jeopardy claim, that there was no

27  "direct evidence" as to Count II. (Exhibit AAAA Part 2, at 15.)  Petitioner did not cast this

28  claim as a due process argument, nor cite any federal due process authorities.

1    In Argument I of his Petition for Review to the Arizona Supreme Court, Petitioner

2    argued that the lack of "substantial evidence" on Count II precluded a conviction under Arizona

3    law[1]. (Exhibit EEEE at 6-7.)  However, Petitioner cited only state authorities in support of this

4    claim.  It is true that "a citation to a state case analyzing a federal constitutional issue serves

5    the same purpose as a citation to a federal case analyzing such an issue." *Peterson v. Lampert*,

6    319 F.3d 1153, 1158 (9th Cir. 2003).   However, none of the state authorities cited by

7    Petitioner are founded on federal law. *See State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866,

8    869 (1990) (decision based on Rule 20, Ariz.R.Crim.Pro.);and *State v. Engram,* 171 Ariz.

9    363, 367, 831 P.2d 362, 366 (Ariz.App. 1991) (same).

10    Moreover, it is not enough that a "somewhat similar state-law claim was made."

11    *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(per curiam).  Indeed, it is not enough "to raise a

12    state claim that is analogous or *closely similar* to a federal claim." *Castillo v. McFadden*, 399

13    F.3d 993, 999 (9th Cir. 2005) (emphasis added).  *But see Baldwin v. Reese*, 541 U.S. 27, 34

14    (2004) (Stevens J. dissenting) (arguing exhaustion should be found where "there is no

15    significant difference" between cited state law and uncited federal law).  In *Hiivala v. Wood,*

16    195 F.3d 1098 (9th Cir. 1999), the Court held that presentation of an "insufficient evidence"

17    claim based on state law was insufficient to raise a federal due process claim of insufficient

18    evidence.  "The mere similarity between a claim of state and federal error is insufficient to

19    establish exhaustion." *Id.* at 1106.  Thus, Petitioner cannot rely on the fact that his Arizona

20    constitutional due process law on which he relied "mirrors federal due process constitutional

21    law." (Reply, #46 at 7.)

22    Although Petitioner asserted a federal due process claim to the trial court, he failed to

23    assert that claim to the Arizona Court of Appeals or the Arizona Supreme Court.  The related

24    federal double jeopardy claim asserted to the Arizona Court of Appeals and the related state

25    law claim asserted to the Arizona Court of Appeals were not fair notice of a federal due

26

27    [1] Petitioner's fair presentation of his claims to the Arizona Supreme Court was not
*necessary* for exhaustion. *See Castillo*, 399 F.3d at 998.  The undersigned presumes, however,

28    that it would have been *sufficient* for exhaustion.

1    process claim. Petitioner failed to fairly present his claim by identifying the federal legal

2    theory underlying his Ground One. *Kelly*, 315 F.3d at 1066. Accordingly, Petitioner's Ground

3    One has not been properly exhausted.

4

5    **3.  Procedural Default**

6            Respondents argue that Petitioner's claims in Ground One is not only unexhausted, but

7    is now procedurally defaulted and therefore subject to dismissal with prejudice.  Petitioner

8    does not assert that he has any state remedy remaining available.

9            Ordinarily, unexhausted claims are dismissed *without prejudice*.  *Johnson v. Lewis*,

10   929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust

11   his available administrative or judicial remedies, and those remedies are now no longer

12   available because of some procedural bar, the petitioner has "procedurally defaulted" and is

13   generally barred from seeking habeas relief.  Dismissal *with prejudice* of a procedurally

14   barred or procedurally defaulted habeas claim is generally proper absent a "miscarriage of

15   justice" which would  excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

16           Remedies by Direct Appeal - Under Ariz.R.Crim.P. 31.3, the time for filing a direct

17   appeal expires twenty days after entry of the judgment and sentence.   The Arizona Rules of

18   Criminal Procedure do not provide for a successive direct appeal.  *See generally*

19   Ariz.R.Crim.P.  31.   Accordingly, direct appeal is no longer available for Petitioner's

20   unexhausted claims.

21           Remedies by Post-Conviction Relief - Petitioner can no longer seek review by the

22   Arizona Court of Appeals of the due process issues raised in his Second PCR petition.

23   Ariz.R.Crim.P. 32.9(c) provides that a petition for review must be filed within 30 days of the

24   trial court's decision.  Petitioner's Second PCR Petition was denied long ago.

25           Nor can Petitioner seek review of "new" claims by a subsequent PCR Petition.

26   Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which

27   are "of-right") be filed "within ninety days after the entry of judgment and sentence or within

28   thirty days after the issuance of the order and mandate in the direct appeal, whichever is the

later."   *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).   That time has also long since passed.

    While Rule 32.4(a) does not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h), Petitioner has not asserted that any of these exceptions are applicable to him.   Nor does it appears that such exceptions in Rule 32.1 would apply to Petitioner.   The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

    Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction.   Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application.   Paragraph (f) has no application where the petitioner filed a timely notice of appeal, and the notice of post-conviction relief of-right applies only to petitions filed following a guilty or nolo contendre plea. *See* Ariz.R.Crim.P. 32.1 (defining when petition of-right). *See also Moreno*

1   *v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998) (on certified question holding that "notice

2   of appeal" in 32.1(f) is direct appeal only, and not appeal from denial of post-conviction

3   relief).  Paragraph (g) has no application because Petitioner has not asserted a change in the

4   law occurring since his last state PCR petition.  Finally, paragraph (h) has no application

5   because Petitioner's actual innocence claims are based upon his challenges to the application

6   of Arizona's's "accomplice liability".laws  These arguments have already been rejected by the

7   Arizona courts in Petitioner's second post-conviction relief proceeding.  Accordingly, the

8   undersigned must conclude that review through Arizona's post-conviction relief process is no

9   longer possible.[2]

10

11  **4.  Cause and Prejudice**

12          If the habeas petitioner has procedurally defaulted on a claim, or it has been

13  procedurally barred on independent and adequate state grounds, he may not obtain federal

14  habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the

15  default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).  Petitioner's Reply does not offer any basis for

16  a finding of cause and prejudice.  The undersigned finds none.

17

18  **5.  Actual Innocence**

19          The standard for "cause and prejudice" is one of discretion intended to be flexible and

20  yielding to exceptional circumstances.  *Hughes v. Idaho State Board of Corrections*, 800

21  F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in an

22  extraordinary case, where a constitutional violation has probably resulted in the conviction of

23  one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis

24  added).  Petitioner argues that any procedural default in the presentation of Ground One should

25

26          [2] Moreover, it is likely that Petitioner's claims are barred under Arizona's rules of
    preclusion.  *See* Ariz.R.Crim.P. 32.2(a).  Because of the limited development of Arizona law
27  on the exception for claims of "sufficient constitutional magnitude," *see Stewart v. Smith*, 536
    U.S. 856 (2002), and the applicability of other clear procedural bars, the undersigned does not
28  reach Respondents' argument on the preclusion bar.

1   be excused because Petitioner is actually innocent.  (Reply, #46 at 9.)

2          However, Petitioner's only support for this contention is his assertion that the

3   transcript reveals that he "did not assault Gary Coffman." (*Id.*)  The charge in Count II did not

4   require proof that Petitioner had personally assaulted the officer.  Rather, the trial court

5   instructed the jury that Petitioner could be convicted on the basis of "accomplice liability."

6   (Exhibit DD, R.T. 3/17/98 at 58.)  Thus, the mere fact that Petitioner "did not assault Gary

7   Coffman" would not render him actually innocent.  Despite Petitioner's protestations of self-

8   defense, and ignorance of any expectation of violent conduct by his co-defendant, the fact that

9   both Petitioner and his co-defendant emerged from the storage office shooting at the police

10  officers provides substantial circumstantial evidence of their complicity in each other's

11  actions.  Petitioner fails to offer any evidence to show that he could not have been found to

12  have been an accomplice to his co-defendant's attack on Officer Coffman.  Rather, he simply

13  argues that there was insufficient evidence presented at trial. However, to be excused from his

14  procedural default Petitioner must "show actual, factual innocence, not just legal insufficiency

15  of the evidence. To establish actual innocence, [the petitioner] must now demonstrate in light

16  of all the evidence, including new evidence that might be introduced by both sides, that 'it is

17  more likely than not that no reasonable juror would have convicted him.' "  *U.S. v. Ratigan,*

18  351 F.3d 957, 965 (9th Cir. 2003) (citations omitted).  Petitioner has not met this burden.

19

20  **6.  Summary re Procedural Default**

21         Based upon the foregoing, the undersigned finds that Petitioner's Ground One is

22  procedurally defaulted, and must be dismissed with prejudice.

23

24  **B.  GROUND TWO: AGREEMENT FOR CONCURRENT  SENTENCING**

25         For his Ground Two for relief, Petitioner argues that his  due process and double

26  jeopardy rights were violated when his sentences were made consecutive to his sentences in

27  the 1995 cases despite the provisions of his plea agreements to the contrary.  (Amended

28  Petition, #26 at 6-6A.)  Respondents argue that Ground Two is without merit because on re-

1    sentencing, Petitioner received the relief he is requesting.  (Anser, #39 at 16.)  In reply,

2    Petitioner argues that Ground Two asserts not only that the plea agreements in the 1995 cases

3    required that his sentences in those cases be concurrent with his sentence in the instant case,

4    but that all sentences in the instant case were required to be concurrent with each other.

5    Petitioner also argues that failure to impose the reduced concurrent sentences on re-

6    sentencing was a violation of due process.  (Reply, #46 at 18-22.)

7         <u>Concurrent with 1995 Case Sentences</u> - To the extent that Petitioner's Ground Two is

8    based upon the trial court's failure to make his sentences in this case concurrent with the

9    sentences in his 1995 conviction, Petitioner apparently concedes that Respondents properly

10   identify the claim as moot.  On remand, the trial court made the sentences concurrent.  The

11   sentences entered on January 4, 2001, provided for consecutive terms of 21 years on each of

12   the counts, with the proviso that those consecutive sentences would be concurrent with those

13   in the 1995 cases.  (Exhibit DDD, Sentences.)

14        <u>Concurrent between Counts</u> - To the extent that Petitioner's Ground Two is based upon

15   the trial court's failure to make the sentences on Counts I and II concurrent with each other,

16   Petitioner fails to show that the plea agreement provided for such concurrent sentencing.

17        In vacating Petitioner's original sentence, the Arizona Court of Appeals addressed this

18   argument, and disposed of it by finding that "the State completely and correctly addressed it

19   in its response."  (Exhibit WW, Mem. Dec. at 5, n.1.)  The State, however, did not address the

20   argument that the plea agreement provided for concurrent sentencing within this case.  Rather,

21   the State addressed Petitioner's claim as simply being an assertion that the trial court had

22   abused its discretion in ordering consecutive sentences.  (Exhibit UU, Response at 7-8.) Thus,

23   it does not appear that the Arizona Court of Appeals made any factual or legal findings as to

24   the claim that the plea agreement in the 1995 cases mandated concurrent sentences in the

25   present case.[3]  Thus, no presumptions of correctness can be applied to the state courts'

26

27        [3]  Because Respondents apparently did not read Petitioner's Petition as including an

28   assertion that the sentences in the instant case should be concurrent to each other,
     Respondents do not address the claim, and do not assert a claim of procedural default.

1   decisions.

2          Two factors, however, require a *de novo* finding that the plea agreements made no such

3   requirement.  The first is the language of the plea agreements.  Plea agreements are generally

4   construed according to the principles of contract law, *see United States v. Johnston*, 199 F.3d

5   1015 (9th Cir.1999), and the government, as drafter, must be held to an agreement's literal

6   terms, *see generally United States v. Baker*, 25 F.3d 1452, 1458 (9th Cir.1994).  The courts

7   "construe ambiguities in favor of the defendant," *United States v. Quach*, 302 F.3d 1096,

8   1100-01 (9th Cir. 2002), ordinarily placing on the government "responsibility for any lack of

9   clarity," *United States v. Anderson*, 970 F.2d 602, 607 (9th Cir. 1992), as amended 990 F.2d

10  1163 (9th Cir. 1993).  Here the language of the plea agreement makes no reference to  the

11  nature of the sentences in this case, but only to their relationship to the sentences in the 1995

12  cases.  The agreements simply provided:

13          The sentence imposed shall run concurrent but not conterminous with
            the sentence Defendant is currently serving in cause number CR94-
14          09172.

15  (Exhibit KK, PCR Petition, at Exhibit A, Plea Agreement at 1.)

16         The second factor precluding a finding that the plea agreements in the 1995 cases

17  required concurrent sentences in the instant case, is the fact that these plea agreements were

18  entered into at a time that Petitioner was already subject to consecutive sentences in this case,

19  albeit for a total of 70 years rather than a total of 42 years.  There is no basis to read into this

20  plea agreement an understanding that Petitioner's sentence in the instant case would be

21  modified.  Moreover, the fact that Petitioner could ultimately be re-sentenced was not

22  contemplated within the plea agreements.  While the parties may have been aware that an appeal

23  was then pending in the instant case, there was no agreement that the appeal would result in a

24  concurrent sentences on re-sentencing, and there was no proviso for re-sentencing to

25  concurrent terms if that appeal was unsuccessful.

26         Petitioner attempts to read into the plea agreement's reference to a singular "sentence"

27  ────────────────

28  Accordingly, the undersigned presumes, for purposes of this Report & Recommendation that
    the claim was properly exhausted.

1  an assertion that concurrent sentences would be applied.  (Reply, #46 at 20.)  However, it is
2  not uncommon for multiple, consecutive prison terms on different charges, rendered as part
3  of a single judgment to be referred to as a single "sentence."  *See e.g. Henry v. Madigan,* 241
4  F.2d 659, 660 (9th Cir. 1957) (discussing "a cumulative *sentence* composed of a number of
5  distinct sentences which * * * (were) to run consecutively"). Indeed, the then extant "sentence"
6  in this case consisted of separate sentences for consecutive prison terms.

7      Thus, Petitioner's claim that the plea agreements in the 1995 cases entitled him to
8  concurrent sentencing in the instant case is unsupported, and is without merit.[4]

9      Double Jeopardy - Petitioner also argues that his double jeopardy rights were violated
10  because he received consecutive sentences after the Arizona Court of Appeals had directed that
11  he receive concurrent sentences.  (Reply, #46 at 21-22 (citing *Kennedy v. U.S.*, 330 F.2d 26,
12  27 (9th Cir. 1964) (re-sentencing cannot result in a shift concurrent sentences to
13  consecutive).)  However, the Arizona Court of Appeals had not mandated that his sentences in
14  this case be concurrent to each other.   To the contrary, they had rejected Petitioner's
15  arguments that he was entitled to concurrent sentencing within this case.  (Exhibit WW, Mem.
16  Dec. at 5, n.1.)

17      Based on the foregoing, Petitioner's Ground Two is without merit and must be denied.

19  **C.  GROUND THREE: DUE PROCESS RIGHT TO CONCURRENT SENTENCE**

20      For his Ground Three for relief, Petitioner argues that his due process rights were
21  violated by the imposition of consecutive sentences in violation of state law.  (Amended
22  Petition, #26 at 7.)  Respondents argue that Ground Three is without merit, because Count I
23  and  Count II of the charges reflected separate conduct.  (Answer, #39 at 16-24.)  In his reply,

25      [4] Petitioner also argues in his Reply that he did not receive a fair hearing on re-
26  sentencing. (Reply #46 at 21.)  No such claim is made in the Petition, and the Court will not
   address new grounds for relief raised for the first time in a reply brief. *Jennings v. U.S.,* 461
27  F.Supp.2d 818, 833 (S.D.Ill.,2006) ("As a general rule, arguments raised for the first time in
   a reply brief are waived.").

Petitioner changes horses by arguing that double jeopardy(rather than due process, as alleged in the Petition) is violated because the acts forming the basis of the conviction on the two counts are the same.   (Reply, #46 at 22-25.)

**1.  Violation of State Law**

To the extent that Petitioner simply alleges an error of state law, he fails to state a valid habeas claim.  A state court determination of state law is not subject to review in a federal habeas court.  *Bains v. Cambra*, 204 F.3d 964, 971 (9th Cir. 2000) ("federal court is bound by the state court's interpretations of state law").

Even if the parties agreed that state law had been violated, this Court would be powerless to grant relief.  A state prisoner is entitled to habeas relief under 28 U.S.C. § 2254 only if he is held in custody in violation of the Constitution, laws or treaties of the United States.  Federal habeas relief is not available for errors in the interpretation or application of state law.  *Estelle v. McGuire,* 502 U.S. 62 (1991); *Middleton v. Cupp*, 768 F.2d 1083 (9th Cir. 1985), *cert. denied,* 478 U.S. 1021 (1986).

Any such error would not, without more, be a violation of federal law.  It has long been understood that a state may violate its own law without violating the United States Constitution. *Gryger v. Burke,* 334 U.S. 728, 731 (1948).

**2.  Due Process**

To qualify for federal habeas relief, an error of state law must be "sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment." *See Pulley v. Harris,* 465 U.S. 37, 41 (1984). Moreover, simple errors of state law do not necessarily imply due process violations.

> We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.

*Gryger,* 334 U.S. at 731.

Rather, to sustain a due process claim founded on state law error, Petitioner must show

that the state court "error" was "so arbitrary and fundamentally unfair that it violated federal due process." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (quoting *Reiger v. Christensen,* 789 F.2d 1425, 1430 (9th Cir.1986)).   To receive review of what otherwise amounts to nothing more than an error of state law, a petitioner must argue "not that it is wrong, but that it is so wrong, so surprising, that the error violates principles of due process"; that a state court's decision was "such a gross abuse of discretion" that it was unconstitutional. *Brooks v. Zimmerman,* 712 F.Supp. 496, 498 (W.D.Pa.1989).

Petitioner offers nothing to show a shocking or gross abuse of discretion.  At best, Petitioner argues that the trial court incorrectly determined it's authority to impose consecutive sentences.  However, Petitioner does not even support that claim under the state laws he references:Ariz.Rev.Stat. § 13-604(M) and Ariz.Rev.Stat.§ 13-116.

State Priors Statute - Petitioner asserts that his sentence was a violation of Ariz.Rev.Stat. § 13-604(M), which provides that "Convictions for two or more offenses committed on the same occasion shall be counted as only one conviction for purposes of this section."  That section, however, relates to counting of prior convictions for purposes of repeat offender enhancements.  Thus, no violation of state law occurred with respect to that statute.

State Sentencing Statute - Petitioner also argues that his consecutive sentences were a violation of Ariz.Rev.Stat.§ 13-116, which provides:

> An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent. An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other, to the extent the constitution of the United States or of this state require.

However, this statute does not preclude consecutive sentences based upon multiple victims injured by a single act.  *See e.g. State v. Henley,* 141 Ariz. 465, 467, 687 P.2d 1220, 1222 (1984) (consecutive sentences authorized where single bullet hit two people).

//

//

**3.  Double Jeopardy**

Petitioner also argues in his Reply on Ground Three that the application of consecutive sentences was a violation of double jeopardy.  (Reply #46 at 23-25.)  Although Petitioner did not expressly identify the double jeopardy clause as a basis for this Ground in his Amended Petition, Respondents construed it as such, and responded accordingly.

Respondents argue that *Blockburger v. United States*, 284 U.S. 299, 304 (1932) recognizes that the Double Jeopardy Clause does not preclude multiple punishments in a single proceeding where each offense contains an element not present in the other, or where there is a clear legislative intent to impose cumulative punishments.  (Answer, #39 at 20-21.) Petitioner replies that there is no clearly expressed legislative intent to authorize cumulative punishment under the facts of his case.  (Reply #46 at 24.)

To the contrary, the Arizona Courts have established that Arizona law authorizes multiple punishments where the only distinction between the charges is the identity of the victim.   *See e.g. Henley,* 141 Ariz. at 467, 687 P.2d at 1222 (consecutive sentences authorized where single bullet hit two people).  In assessing legislative intent to prescribe cumulative punishments for a single criminal incident, the federal courts are bound by a state court's determination of their legislature's intent.  *Cummings v. Evans,* 161 F.3d 610, 615 (10th Cir. 1998).

Moreover, this Court need not delve into the intent of the Arizona legislature, because Petitioner's convictions pass the *Blockberger* "same conduct" test.  In *Blockberger*, the court concluded that "the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." 284 U.S. at 304. Petitioner's conviction under Count I required proof of his assault on Officer Blackshear, but not proof of his assault on Officer Coffman.  Count II required proof of assault (albeit as an accomplice) on Officer Coffman, but not on Officer Blackshear.  This distinction in the victims in each count is sufficient to avoid any double jeopardy concerns.  *See e.g. Steele v. Young,* 11 F.3d 1518, 1523 (10th Cir. 1993) (finding no double jeopardy violation in consecutive sentences for single assault on different victims).  *See also Single Act*

*Affecting Multiple Victims as Constituting Multiple Assaults or Homicides*, 8 A.L.R. 4th 960 (1981). Thus, even though the conduct of Petitioner underlying each conviction may be identical, the requirement of proof of the disparate victims avoids any double jeopardy concerns.

**Summary**- Based on the foregoing, Petitioner's Ground Three is without merit, and must be denied.

**D.  GROUND FOUR: *Apprendi / Blakely* CLAIM**

For his Ground Four for relief, Petitioner argues that his due process rights were violated by the aggravation of his sentence by factors not determined by the jury. (Amended Petition, #26 at 8.) Respondents argue that Ground Four is without merit because *Blakely* is not retroactively applicable on habeas review. (Answer, #39 at 24-25.) Petitioner replies that *Apprendi* was existent at the time his conviction became final, and therefore no new rule need be applied to justify relief. (Reply #46 at 25-35.) Further, Petitioner argues that he should be entitled to equitable tolling for the delay in presenting his *Blakely*/*Apprendi* claims, and that the claims are meritorious. (*Id.* at 35-38.)

**Retroactivity** - The Ninth Circuit Court of Appeals has held that neither *Apprendi* nor *Blakely* may be applied retroactively to cases on collateral review if they were final at the time these decisions were rendered by the United States Supreme Court. *See Schardt v. Payne*, 414 F.3d 1025 (9th Cir.2005) (*Blakely*); and *Reynolds v. Cambra*, 290 F.3d 1029, 1030 (9th Cir.2002) (*Apprendi*). In so holding, the 9th Circuit has determined that both of these cases establish new procedural rules of law. Petitioner's arguments to the contrary (Reply, #46 at 29-33) are not subject to this Court's determination.

"A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Caspari v. Bohlen,* 510 U.S. 383, 390 (1994). Here, Petitioner's direct review by the state courts, following his re-sentencing, terminated on March 4, 2002 when the Arizona

1   Supreme Court denied Petitioner's Petition for Review.  (Exhibit III.)  Petitioner had 90 days

2   thereafter to file a petition for a writ of certiorari.   U.S.S.Ct. R. 13(1).  Accordingly,

3   Petitioner's conviction became final on June 3, 2002.[5]

4       Therefore, Petitioner may rely upon the 2000 decision in *Apprendi* but not the 2004

5   decision in *Blakely*.

6       ***Apprendi* -**In *Apprendi*, the Supreme Court held that:  "Other than the fact of a prior

7   conviction, any fact that increases the penalty for a crime beyond the prescribed statutory

8   maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at

9   490.  Respondents argue, in a footnote, that "[t]he trial court never sentenced Petitioner to a

10  term higher than the aggravated sentencing range, and Petitioner has never claimed anything

11  to the contrary. For this reason, the trial court's sentencing of Petitioner comported with

12  *Apprendi*."  (Answer, #39 at 24, n. 13.)

13      Indeed, *Apprendi* did not address the effect of a judicial determination of aggravating

14  factors.  Rather, it was limited to judicially determined increases over the otherwise applicable

15  statutory maximum.  In deciding that *Blakely* was not retroactive, the Ninth Circuit determined

16  that *Blakely*'s extension of *Apprendi* to aggravated sentences within a statutory maximum was

17  a new procedural rule, not merely an application of the existing law of *Apprendi*. *Schardt*, 414

18  F.3d at 1036. It is apparent, therefore, that *Apprendi* itself did not preclude the trial court from

19  determining the factors necessary to aggravate Petitioner's sentence, so long as the court did

20  not exceed the applicable statutory maximum.  As noted by Respondents, Petitioner has never

21  asserted that the statutory maximum sentence was exceeded.

22      **Equitable Considerations**-Petitioner argues that he should yet be able to rely on

23  *Apprendi* and *Blakely* because of various equitable considerations, *e.g.* his *pro se* status and

24  limited legal resources, and the merits of his claim. (Reply, #46 at 33-38.)   Petitioner

25  misapprehends the *Teague* non-retroactivity decisions as a timeliness or waiver rule. They are

26

27      [5]  This is true, notwithstanding the fact that the Arizona Court of Appeals did not issue
    its mandate until April 4, 2002.  U.S.S.Ct. R. 13(3) (time for petition runs from decision, not
28  mandate).

1   not.  Rather, they are mechanisms for determining what the evolving law of the land is at a
2   given juncture in time, to allow finality to eventually attach to courts' decisions.  "At bottom,
3   however, the *Teague* doctrine 'validates reasonable, good-faith interpretations of existing
4   precedents made by state courts even though they are shown to be contrary to later decisions.'"
5   *O'Dell v. Netherland,* 521 U.S. 151, 156 (1997) (quoting *Butler v. McKellar*, 494 U.S. 407,
6   414 (1990)).  The diligence or good faith  of the Petitioner is not relevant to that
7   determination.

8

9   **E. SUMMARY**

10          Ground One (Insufficient Evidence) of the Amended Petition is procedurally defaulted
11   and must be dismissed with prejudice.  The balance of the Petition, including Ground Two
12   (Agreement for Concurrent Sentences), Ground Three (Due Process / Double Jeopardy), and
13   Ground Four (*Apprendi Blakely*) are without merit and must be denied.

14

15                               **IV.  RECOMMENDATION**

16          **IT IS THEREFORE RECOMMENDED** that Ground One (Insufficient Evidence) of
17   the Petitioner's Amended Petition for Writ of Habeas Corpus, filed March 29, 2006  (#26) be
18   **DISMISSED WITH PREJUDICE**.

19          **IT IS FURTHER RECOMMENDED** that the remainder of Petitioner's Amended
20   Petition for Writ of Habeas Corpus, filed March 29, 2006  (#26) be **DENIED**.

21

22                          **V. EFFECT OF RECOMMENDATION**

23          This recommendation is not an order that is immediately appealable to the Ninth Circuit
24   Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate*
25   *Procedure*, should not be filed until entry of the district court's judgment.

26          However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall
27   have ten (10) days from the date of service of a copy of this recommendation within which to
28   file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section

1    2254 Proceedings.  Thereafter, the parties have ten (10) days within which to file a response

2    to the objections.  Failure to timely file objections to any factual or legal determinations of

3    the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of

4    the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*).

5

6    DATED: April 16, 2007

7    _____
                                         JAY R. IRWIN
                                 United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28